JOSEPH BARLOW, CLAIMANT OF EIGHTY-FIVE HOGSHEADS OF SUGAR, APPELLANT V. THE UNITED STATES.

Construction of the acts of congress relative to drawback on refined sugar. The legislature did not in the enactments in reference to drawback intend to supersede the common principle of the criminal as well as the civil jurisprudence of the country, that ignorance of the law will not exempt its violation. .

ON appeal from the circuit court of the United States for the southern district of New York.

In the district court of the United States for the southern district of New York, a libel was filed by the United States, for the forfeiture of eighty-five hogsheads of sugar, alleging them to have been entered for the benefit of drawback under a false denomination; viz, as refined sugars, with intent to defraud the revenue.

The answer of the claimant, Joseph Barlow, denied that the sugars were entered by a false denomination, or with intent to defraud the revenue; and insisted they were refined sugars within the meaning of the act of congress. Testimony was taken in the district court by the parties to the proceedings, and that court decreed as follows :

"The sugars mentioned in the pleadings in this cause is not refined sugar within the meaning of the act of congress of January 21, 1829, and that entry was made of the said sugar in the office of the collector of the port of New York for exportation by a false denomination, the same being entered by the owner for the benefit of drawback or bounty, under the denomination of refined sugar. But it is further considered and decreed, that it has been made to appear, to the satisfaction of this court, that such false denomination happened by the mistake of the claimant, the owner, in believing bastard sugar to be refined sugar, entitled to the drawback provided by the said act of congress. And it is further considered and decreed by this court, that the forfeiture of the said sugar so entered has not been incurred by the owner. It is further ordered and decreed

by this court, that the said claimant pay the taxable costs of the libellants and of the officers of this court in this cause; and that, therefore, the libel filed in this cause be dismissed, and that the said sugar be delivered up on demand, at reasonable times, to the said claimant; and it is further ordered, that a certificate of probable cause of seizure be given to the collector or officer of the customs, by whom the seizure of the said sugar may have been made."

From this decree both parties appealed to the circuit court for the southern district of New York. On the 4th January 1831, the circuit court made the following decree.

This cause having been brought to a hearing upon the pleadings and proofs therein, and counsel having been heard upon the appeal by the United States of America, as well as upon the appeal by Joseph Barlow, the claimant of the sugars mentioned in the pleadings in the cause, and the court having taken time to advise as to its decision, due deliberation being had, it is now ordered, adjudged, and decreed by the court, and his honour, Smith Thompson, judge of this court, doth order, adjudge, and decree, that the appeal of the said Joseph Barlow, claimant as aforesaid, be dismissed, with costs.

And it is further, in like manner, ordered, adjudged, and decreed, that the decree of the district court of the United States for the southern district of New York, so far as the same acquits the said sugars from forfeiture, for the causes in the libel in this cause mentioned, be reversed, with costs.

And it is further, in like manner, ordered, adjudged and decreed, that the said sugars are not refined sugars, entitled to the benefit of drawback or bounty, within the meaning of the act of congress of the 21st of January, anno domini eighteen hundred and twenty-nine, and that the same were entered in the office of the collector for the port of New York, for the benefit of drawback or bounty, under a false denomination, and with intent to defraud the revenue of the United States.

And it is accordingly, in like manner, further ordered, adjudged, and decreed, that the said sugars be, and the same are condemned, as forfeited to the use of the United States, and that the said United States do recover their costs of suit,

[Barlow v. The United States.]

to be taxed against the said Joseph Barlow, claimant as afore-said.

The claimant appealed to this court.

The case was argued by Mr Morton and Mr Ogden for the appellant, and by Mr Taney, attorney-general, for the United States.

Mr Justice STORY delivered the opinion of the Court.

This is a libel of seizure instituted in the district court for the southern district of New York, which comes before this court upon an appeal from a decree of the circuit court of that district, condemning the property, viz. eighty-five hogsheads of sugar, as forfeited to the United States.

The charge in the libel is, that the sugars were entered in the office of the collector of the customs for the district of New York for the benefit of drawback or bounty upon the exportation thereof, by a false denomination, with an intent to defraud the revenue. The claimant in his claim admits that he made the entry for the benefit of the drawback on the exportation; but he denies that the entry was made by a false denomination; and he asserts, that the sugars are truly refined sugars, as they are denominated in the entry.

The eighty-fourth section of the duty collection act of 1799, ch. 128, upon which the libel is founded, provides, that if any goods, wares, or merchandize, of which entry shall have been made in the office of a collector for the benefit of drawback or bounty upon exportation, shall be entered by a false denomination, or erroneously as to the time when, and the vessel in which they were imported, or shall be found to disagree with the packages, quantities, or qualities, as they were at the time of the original importation, &c. &c., all such goods, wares, and merchandizes, &c., shall be forfeited; provided, that the said forfeiture shall not be incurred, if it shall be made appear to the satisfaction of the collector, &c., or of the court, in which a prosecution for the forfeiture shall be had, that such false denomination, error, or disagreement, happened by mistake or accident, and not from any intention to defraud the revenue.

The language of this section is certainly sufficient to include the case at bar, if all the material facts are established. The sugars were entered for the benefit of drawback, or bounty, in the office of the collector; and if the entry was by a false denomination, the forfeiture is incurred; unless the claimant can avail himself of the proviso, or some other matter in defence.

It has, however, been contended at the bar, that in the case of refined sugars exported for the benefit of drawback and bounty, no entry is required by law to be made at the office of the collector; but that a system of regulations has been specially provided for such exportations, which supersedes or controls those of the eighty-fourth section. And in support of this argument it has been urged, that the eighty-fourth section applies only to articles which have been previously imported and subjected to duties.

It appears to us upon full consideration, that this argument is not well founded. Sugars have been made subject to duties upon their importation from the first establishment of the government down to the present time in every tariff law; and it is notorious, that until after the acquisition of Louisiana in 1803, no sugars were grown in the United States; and, consequently, all which were used or refined within the United States must have been of foreign growth and importation. So, that if an entry under the eighty-fourth section were required only upon the exportation of dutiable articles which had been imported, all sugars, whether refined or not, might have been within the provisions of that section. This is rendered still more obvious by the terms of the act of the 5th of June 1794, ch. 51, which first gave a drawback upon refined sugars. That act laid a duty of two cents per pound upon all sugar which should be refined in the United States; and declared, that the duties thereby laid upon such sugar, should and might be drawn back upon such sugar refined within the United States after the 30th of September then next, which after that day should be exported from the United States to any foreign port or power; "and adding to the drawback upon sugar so exported three cents per pound *on account of duties paid upon the importation of raw sugar.*" This act was continued in force until March 1801; and then was permitted to

expire. It contains, however, substantially the same provisions in regard, to the proceedings to be had by the exporter upon the exportation of refined sugar, as are contained in the subsequent acts, by which the system of drawbacks upon refined sugar was revived; and especially the act of 24th of July 1813, ch. 21, which still remains in full force.(a) So that it is clear, that the regulations prescribed on the subject of the drawback upon refined sugars by the act of 1794 were not supposed by the legislature to interfere in any manner with the provisions of the eighty-fourth section of the act of 1799; but were deemed auxiliary to the same general object, the prevention of frauds upon the revenue. They are quite compatible with each other, and aim at the same result. The terms, however, of the eighty-fourth section are not confined to cases of drawback upon imported goods (though from what has been already stated all sugars at that period must have fallen under that predicament); but they apply to *any* goods, wares and merchandize, of which entry shall be made for the benefit of drawback or bounty. Other provisions of the act of 1799, ch. 128, demonstrate this intent in the fullest manner. The bounty given by the eighty-third section of the same act, on pickled fish and salted provisions, would be strongly in point. But the seventy-sixth section of the same act speaks directly to the purpose; and after prescribing the notice to be given by the exporter to entitle himself to the benefit of the drawback, it provides that he shall make entry of the particulars thereof at the custom house, &c.; *and if imported articles*, the name of the vessel, &c. and the place from which they were imported. So that the form of the entry contemplated cases of non-imported, as well as of imported articles. The act of 20th of February 1819, ch. 447, manifestly contemplates the same system of entries in such cases as then fully in existence; for it provides, that "in addition to the forfeitures and penalties heretofore provided by law for making a false entry with the collector of any district of any goods, &c. for the benefit of drawback or bounty on ex-

---

(a) See act of 24th of July 1813, ch. 21 ; act of 30th April 1816, ch. 172 ; act of 20th April 1818, ch. 365, sect. 11 ; act of 20th January 1829, ch. 11.

[Barlow v. The United States.]

portation, the person making such false entry shall, except in the cases heretofore excepted by law, forfeit and pay to the United States a sum equal to the value of the articles mentioned or described in such entry." It is impossible to give any rational interpretation to this enactment, unless by referring it back to the eighty-fourth section of the act of 1799, as one then operative in its fullest extent on all subjects of drawback. And the circumstances of this case abundantly establish, that such has been the practical construction of these acts by the government, as well as of the custom house department. We think, then, that this objection cannot be sustained.

The next question is, whether the sugars were in this case entered by a false denomination. They were entered by the name of " refined sugars." They were, in fact, sugars known by the appellation of *bastar*, or *bastard* sugars, which are a species of sugars of a very inferior quality, of less value than the raw material; they are the residuum or refuse of clayed sugars, left in the process of refining, after taking away the loaf and lump sugar, which results from that process. The question is, whether this species of sugar is, in the sense of the acts of congress, " refined sugar." These acts allow a drawback " on sugar refined within the United States."

It has been contended in argument, that all sugars which have undergone the full process of refining, after they have arrived at the point of granulation, are properly to be deemed refined sugars, whether they have been clayed or not. In a certain sense, they may certainly be then deemed to be refined; that is, in the sense of being then clarified and freed from their feculence. But the question is, whether this is the sense in which the words are used in the acts of congress.

The acts of congress on this subject, are regulations of commerce and revenue; and there is no attempt in any of them to define the distinguishing qualities of any of the commodities which are mentioned therein. Congress must be presumed to use the words in their known and habitual commercial sense;

not indeed in that of foreign countries, if it should differ from our own, but in that known in our own trade, foreign and domestic.    If in a loose signification among refiners, sugars should sometimes be spoken of as being refined, without having undergone the further process of claying; or if the whole mass resulting from that process should sometimes indiscriminately acquire among them that appellation in a like loose signification; still, if among buyers and sellers generally in the course of trade and business, the appellation "refined sugars," is exclusively limited to the products called lump and loaf sugar, and never includes bastard sugar, the acts of congress ought to be construed in this restrictive sense, as that peculiarly belonging to commerce.    This was the doctrine of this court asserted in the case of Two Hundred Chests of Tea, Smith, claimant, 9 Wheaton's Reports, 438, 439; and there is not the slightest inclination 'on the part of this court to retract it. Now, without minutely sifting the evidence in this case, we think that there is a decisive and unequivocal preponderance of evidence to establish, that bastard sugar is not deemed, in a commercial sense, "refined sugar."   The appellation is exclusively limited to such as have assumed at some time the form of white refined loaf or lump sugars. This is established, not merely by the testimony of merchants and grocers, and persons in the custom house, but by the testimony of sugar refiners.   A sale of refined sugars would be deemed by them not complied with by a delivery of bastard sugars.   If this be so, it puts an end to the question, whether the sugars in controversy were entered by a false denomination.

If they were entered by a false denomination, then they are subject to forfeiture, unless the party can bring himself within the exceptions of the proviso of the eighty-fourth section.   And here the onus probandi rests on him to extract the case from the penal consequences of an infraction of the law. Were these sugars entered by a false denomination, happening by mistake or accident, and not from any intention to defraud the revenue?   There was no accident in the case; there was no mistake in point of fact; for the party knew what the article was when he entered it.   The only mistake, if there has been

[Barlow v. The United States.]

any, is a mistake of law. The party in the present case has acted, indeed, with his eyes open; against the known construction given to the acts by the government and the officers of the customs. He has not been misled; and his conduct in the course of making the shipment, if it be entirely compatible with good faith, is not wholly free from the suspicion of an intention to overreach, and evade the vigilance of the custom house department. He has made every effort in his power to obtain the drawback, by passing off, as refined sugars, what he well knew were not admitted to be such by the higher government officers.

But we do not wish to put this case upon any ground of this sort. It presents the broader question, whether a mistake of law will excuse a forfeiture in cases of this description. We think it will not. The whole course of the jurisprudence, criminal as well as civil, of the common law, points to a different conclusion. It is a common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally; and it results from the extreme difficulty of ascertaining what is, bona fide, the interpretation of the party; and the extreme danger of allowing such excuses to be set up for illegal acts to the detriment of the public. There is scarcely any law which does not admit of some ingenious doubt; and there would be perpetual temptations to violations of the laws, if men were not put upon extreme vigilance to avoid them. There is not the least reason to suppose that the legislature, in this enactment, had any intention to supersede the common principle. The safety of the revenue, so vital to the government, is essentially dependent upon upholding it. For mistakes of fact, the legislature might properly indulge a benignant policy, as they certainly ought, to accidents. The very association of mistake and accident, in this connexion, furnishes a strong ground to presume that the legislature had the same classes of cases in view; accident, which no prudence could foresee or guard against, and mistakes of fact, consistent with entire innocence of intention. They may both be said, in a correct sense, to *happen*. Mistakes in the construction of the law, seem as little intended to be excepted

[Barlow v. The United States.]

by the proviso, as accidents in the construction of the law. Without going more at large into the circumstances of the case, it is the opinion of the court that the judgment of the circuit court ought to be affirmed, with costs.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the southern district of New York, and was argued by counsel: on consideration whereof, it is ordered, adjudged and decreed by this court, that the decree of the said circuit court in this cause be, and the same is hereby affirmed, with costs.