DUTY EVANS *v.* THE COMMERCIAL MUTUAL INSURANCE COMPANY.

Where, under a policy on all iron purchased by, or consigned to, the insured, insurance was effected by him on "808 bundles rods" at and from Liverpool to Providence, via New York and Boston, and the policy provided, "that said company shall not be liable for any partial loss on bar or sheet iron, iron wire, hoop iron, tin plates, ice, salt, grain of all kinds, &c.; nor for any partial loss on hemp or flax, unless the same shall amount to 20 per cent. on the whole aggregate value thereof," &c.; *Held,* in case of a partial loss claimed on the bundles of rods insured, that the court cannot determine as a matter of law, whether "bundles of rods" are "bar iron," within the meaning of the proviso, but that the same is a question of fact to be submitted to the jury; that, to the meaning of these terms in the trade, the testimony of any persons connected with it, whether as manufacturers, retail dealers, or workers in iron, as well as of insurers of iron or merchants effecting insurance upon it, was admissible in evidence;—but that such testimony might be controlled by evidence of a usage to treat "bundles of rods" as "bar iron" under the above proviso, in the adjustment of losses upon such policies; to which usage only the testimony of insurers, insurance brokers, and merchants accustomed to make and settle losses upon contracts of insurance upon such subjects, should be admitted.

Held, also, that the rule to ascertain the amount of a partial loss was, by deducting the gross produce of sales of the damaged goods, at the port of arrival, from the gross produce of the sales of such goods if they had arrived sound, to ascertain the proportion or percentage of loss, and to take that percentage upon the cost of the goods insured, or their value in the policy, as the amount which the insurer is to pay; but that under the above proviso the insurer was exempted from any partial loss on "bar iron," though the same exceeded 20 per cent.; but that, where the jury, being misinstructed

in this last particular, found for the plaintiff, under the general issue, a partial loss, exceeding 20 per cent., but also found specially, upon the evidence, that "bundles of rods" were not "bar iron," the misinstruction was no ground for new trial.

ASSUMPSIT, by an importer and dealer in iron, to recover a partial loss under a policy of insurance, effected by him with the defendants, on all iron purchased for him, or consigned to him, at and from Liverpool, to Providence, via New York or Boston, by vessel or vessels, against loss or damage on the high seas, and elsewhere.   At the trial before Mr. Justice Bosworth, with a jury, at the present term of this court, it appeared, that on the 4th day of September, 1852, the plaintiff took out a policy from the office of the defendants, " on all iron, purchased for him, or consigned to him, at and from Liverpool to Providence, via New York or Boston, by vessel or vessels ; commencing the risk on the 1st instant, and to continue until notice is given by either party to the other, in writing ; due notice in all cases to be given to the company on receiving information of shipments ; " and that the plaintiff, having purchased at the cost of $969, and ordered to be shipped to him from Liverpool, 808 bundles of slit iron rods, on the 21st day of March, 1856, gave notice of the same, under his policy, to the defendants, who, by their secretary, indorsed thereon the following memorandum of insurance :—

" 1856.   No. 32.   Duty Evans.
" March 21.   $1,100, on 808 bundles rods, on board the ship Chattahochee, at and from Liverpool to New York, and thence to Providence, as customary, at 1¼ less 1½ 13.55.
                        (Signed)            J. A. BUDLONG, *Sec'y.*"

The iron, which was duly shipped in the Chattahochee, arrived at New York, but was found, when broken out and discharged, to be more or less wet, rusted, and damaged by salt water.   The plaintiff produced evidence tending to prove that this damage was caused by an excess of water in the bilges of the vessel, caused by its careening in heavy gales, which forced the water beyond the reach of the main pumps of the ship, and where her bilge pumps had neither power nor capacity to free

her. The policy contained the following clause descriptive of the perils insured against and limiting the liability of the insurers in case of partial losses : —

" And the said Commercial Mutual Insurance Company agree to bear and take upon themselves, in the voyages described in said endorsements, the danger of the seas, of fire, enemies, pirates, overpowering thieves, restraints and detainments of all kings, princes or people, of what nature or quality soever ; barratry of the master [unless the insured be owner of the vessel] and of the mariners ; and all other losses or misfortunes that have or shall come to the damage of said property or any part thereof, to which insurers are liable : *Provided*, that said company shall not be liable for any partial loss on bar or sheet iron, iron wire, hoop iron, tin plates, ice, salt, grain of all kinds, Indian meal, tobacco not manufactured, peas, beans, hayseed, fruits, (whether preserved or otherwise,) hams, cheese, dry fish, vegetables and roots, molasses, hempen yarn, cotton bagging, pleasure carriages, household furniture, skins or hides, musical instruments, looking-glasses, or any articles that are perishable in their own nature : nor for any partial loss on hemp or flax, unless the same shall amount to twenty per cent. on the whole aggregate value thereof ; nor for any partial loss on cutlery, hardware, flour, butter, lard, sugar, rice, manufactured tobacco, flaxseed, bread, coffee, pepper, or on vessels valued at less than ten thousand dollars, unless the same shall amount to ten per cent. on the whole aggregate value of such articles, or the agreed value of such vessel : nor for any partial loss on any other articles, or vessels or freights, unless it amounts to five per cent. on the aggregate or agreed value thereof ; exclusive in each case of the charges or expenses incurred for the purpose of ascertaining and proving the loss ; but the insured shall recover on a general average."

It further appeared from the evidence, that upon the arrival of the iron at Providence, it was sold by the plaintiff at auction, in one lot, and bid in for himself, at the price of $1244.32, cash, and subsequently sold by him for the sum of $1583.68, at six months.

The defendants resisted payment of the claim of the plaintiff

under this policy; *first*, on the ground, that inasmuch as he had sold the iron at the port of delivery for a price greatly exceeding what he had paid for it at the port of lading, he had sustained no loss recoverable under the policy; and *second*, because, as a matter of law, bundles of rods were, as "bar-iron," excepted from partial losses, by the above quoted clause of the policy. .The judge presiding at the trial overruled these grounds of defence; whereupon much testimony was adduced on both sides for the purpose of showing the meaning of the word "bar-iron" in the iron trade; the plaintiff contending that it did not, and the defendant that it did embrace "bundles of slit rods," for the purpose of showing, on the one side, that it was without, and on the other that it was within, the above exception.

In the course of his evidence, the plaintiff offered the evidence of blacksmiths and retail dealers in iron, to prove the meaning of the phrases, "bar-iron," and "bundles of rods," in the trade; to which the defendants objected, on the ground, that no witness should be allowed to testify upon this point, except importers, accustomed to insure iron, or insurers, insurance brokers, and the like; the question involving the meaning of these phrases in a policy of insurance. The court, however, admitted the testimony, as well as the testimony of importers, insurers, &c. on both sides, as to the customary meaning of the phrase in question in the trade.

Appended to the bill of lading and receipt for duties at the custom-house in New York, put in evidence by the plaintiff, was an application by the plaintiff to the collector of that port, made by an agent, for a partial remission of duties in consequence of the damaged state in which the iron had arrived, together with the report of an appraiser, that the damage was twenty per cent.; and it appearing that the plaintiff had through his agent paid duties according to this appraisement of the partial loss, the defendants requested the court to charge the jury, that the plaintiff was concluded by this act of his own agent as to the amount of damage by the perils of the sea between Liverpool and New York, which the judge presiding at the trial refused to give.

The defendants also requested the court to charge the jury

that if they found the subject of insurance to be " bar-iron," within the meaning of the above quoted clause of the policy, that the insurers were not liable for any partial loss thereon, which the judge presiding at the trial refused to do; but did charge the jury, that, within the meaning of that clause, they must find for the plaintiff any partial loss upon the subject of insurance, if " bar-iron," provided such partial loss exceeded 20 per cent. of the value thereof, and if not bar-iron, provided the partial loss exceeded five per cent. on the value thereof.

The defendants duly excepted, at the trial, to the above rulings and instructions of the court, and the jury having found, specially, that " bundles of rods " were not " bar-iron " within the sense of the policy, and assessed the plaintiff's damages at $500, the defendants now moved for a new trial upon the ground of errors in matter of law committed by the judge presiding at the trial in these rulings and instructions.

*T. A. Jenckes,* for the motion, argued the several grounds by him taken at the trial; and cited, to the point, that there was no loss in this case upon which the plaintiff could recover, comparing the cost of the iron at the port of shipment with what it brought at the port of delivery, 2 Arnould on Ins. 964; and to the points, that the court should have ruled, as a matter of law, that " bundles of rods " were within the articles excepted in the policy from partial loss, and that the testimony of other witnesses than those familiar with the adjustment of losses upon policies on iron was inadmissible to prove the meaning of the phrases " bar-iron " and " bundles of rods " for the purposes of the trial, he cited, 1 Ibid. 76 ; Park on Ins. 149, 160, 161.

*W. H. Potter,* against the motion, cited, to the rule of ascertaining the amount of a partial loss adopted by the court at the trial, Archbold's Nisi Prius, 208; 2 Wheaton's Selwyn, 992; that parol evidence is admissible to show the meaning of terms employed in a policy of insurance, 1 Greenl. Ev. sect. 295 ; 1 Phillips on Ins., arts. 142, 143, 144; and that it is the province of the jury to decide on the meaning of such terms, 2 Ib. arts. 1942, 1947.

AMES, C. J.   The first cause for new trial set down in the motion is, that the judge who presided at the trial refused to

instruct the jury, that the plaintiff, notwithstanding his goods were damaged by a peril insured against, could recover nothing under his policy, if the goods insured brought more, though damaged, in the port of arrival, than they cost when found in the port of shipment; that is, as we understand the request, enough more to make the adventure a profitable one. It is clear that the judge would have fallen into a gross error had he given such instruction. The insurer of goods against damage by the perils of the sea has no right to the mercantile profit of the insured by way of set-off to the sea-damage, any more than he is subject to the mercantile loss of the adventure by way of increase or aggravation of the sea-damage. The instruction asked for would make an indemnity against perils of the seas dependent upon the state of the market at the port of arrival, which is the risk of the merchant, and in no way connected with the perils against which he has obtained the indemnity. The great excellence of the rule for the adjustment of a partial loss, laid down by Lord Mansfield in *Lewis* v. *Rucker*, 2 Burr. 1167, and established by Mr. Justice Lawrence in *Johnson* v. *Sheddon*, 2 East, 581, which has prevailed ever since and was applied in this case is, that it yields the same result whether the goods are imported at a profit or a loss. It is, by deducting the gross produce of sales of the damaged goods at the port of arrival from the gross produce of the sales of such goods if they had arrived sound, to ascertain the proportion or percentage of loss in consequence of the damage; as one half, one third, one quarter, or the like; and to take that aliquot part of, or percentage upon, the cost of the goods insured or their value in the policy, as the amount which the insurer is to pay. This rule in application to any state of things, can never be liable to the objection made to it at the argument, that it may subject the insurer to more than the cost of the article, or to its value as agreed in the policy; since it can never be but a proportion of that cost or value, and the precise proportion due to the damage from the perils insured against.

The next ground for new trial alleged is, that the court erred in refusing to instruct the jury as matter of law, that " bar-

iron," in the clause of the policy enumerating for what subjects of insurance the company should not be liable for a partial loss, included as the same, or at least within the same reason, " bundles of rods." We know no rule of law by which this identity, either in fact or within the spirit of the clause in question, is ascertained. " Bar-iron " is a term of trade, including, it may be, what those out of the trade would not deem to be " bars of iron," and excluding, it may be, what -they would. At all events, this is a question of fact; and as such could not properly be decided by the court. If as terms of trade, " bar-iron " and " bundles of rods " meant, in general, different forms of iron, it was certainly not for the court to say that in the clause in question, the one nevertheless included the other, because it was within the same reason. The court, as a matter of law, cannot know that they are within the same reason; and if the judge did, as a matter of fact, he must nevertheless leave it to the jury. But further, if " bar-iron " does not, in the trade, include " bundles of rods," and yet, like " pease " and " corn " in the old cases concerning the common memorandum, they should be deemed the same in this clause, because within the same reason, this, as those cases show, is a good basis for a custom amongst merchants and insurers in the adjustment of losses, to consider and treat them as the same, but no reason, without such custom, why the court should construe them to be the same. The whole matter as to the meaning of these terms, as terms of trade, and in the clause in question, was very properly, as we think, left to the jury.

And this brings us to the question of the admissibility of the testimony of others engaged in the iron trade, than merchants and insurers procuring insurance and insuring in it, to prove the meaning of these terms. We take it that he who insures in a trade, and uses in his policy phrases or terms which have a distinctive trade meaning, is presumed to know, and is bound by that meaning; and we see no reason why any person connected with the trade, whether as a manufacturer, importer, or dealer in any form, so that as something within his line of business, he may reasonably be presumed to know the meaning of the trade terms, is not qualified, as

5 *

an expert, to swear with more or less authority, to their meaning. This is the rule constantly acted upon in the trial of revenue causes in the courts of the United States, where the duty which a particular article shall pay turns upon the distinctive meaning of the articles enumerated in the tariff acts. All who deal in the articles, whether as manufacturers, importing merchants, retailers, or artisans, are admitted to testify to the names used in trade to distinguish them. *Two Hundred Chests of Tea, Smith, Claimant,* 9 Wheat. 439, 440; *Barlow* v. *The United States,* 7 Peters, 409, 410; *United States* v. *One Hundred and Twelve Casks of Sugar,* 8 Ib. 277.

It may be, that beside the general trade meaning, certain terms may have acquired, in application to insurance in it, a customary meaning, far more inclusive than the ordinary trade meaning of them ; so that, to illustrate by the trade in question, " bar-iron " may include " bundles of rods," or " sheet-iron" may include " boiler-plates," or the like, as in the cases cited on the part of the defendants from Park on Insurance, " corn," in the common memorandum, was construed by custom, to include " pease " and " beans." This may certainly be proved by the custom of adjusting losses under such policies as in those cases it was proved ; and can only be proved by persons accustomed to insure, and procure insurance, and to adjust losses under policies upon such subjects. To prove such a custom in the adjustment of losses, the witnesses need not be necessarily persons engaged in the iron trade ; but insurers and insurance brokers would be quite as admissible as witnesses, because from their business, quite as likely to be cognizant of the custom, as iron merchants accustomed to procure such policies, and to receive losses under them. Now, as we learn from the allowance of the judge who tried this cause, testimony from the trade, to ascertain the meaning of these disputed terms, as used in the several branches of it, and from insurers and merchants, insuring and procuring insurance on iron, to ascertain the meaning of these terms in the usual or general language of trade and business, was allowed on both sides to pass to the jury. We deem this, to say the least of it, sufficiently liberal to the defendants ; and that they

have no cause to complain of the rulings of the court in these particulars. ·

Had, indeed, the defendants offered evidence of a custom amongst insurers and merchants, in the adjustment of losses under policies on iron, to treat "bundles of rods" as "bar-iron," within the clause of the policy exempting insurers from liability for partial losses on the latter, and having thus laid a sufficient basis for the request, asked the court to instruct the jury, that if they found that notwithstanding the general distinctive meaning of these terms in the trade, they had acquired from such custom, amongst insurers and merchants procuring insurance, an identical meaning, and that in such case the particular meaning so proved, must prevail over the general trade meaning of the terms, the instruction would have been given, or if refused would have been cause for a new trial. We do not understand however, that any such evidence was submitted to the jury, or that any such request was made. The court was, in substance, asked to exclude the testimony of retailers and workers in iron, as to the meaning of "bar-iron" and "bundles of rods," in the trade, and to admit exclusively the testimony of insurers, and merchants procuring insurance on iron, to their understanding of the meaning of "bar-iron" in the clause of the policy in question, as distinguished from a customary meaning attached to the term in the clause *derived from the actual adjustment of losses under it.* We see no propriety in the admission of such testimony at all; and certainly none in the exclusion of testimony to the meaning of the term "bar-iron," as used in the trade, derived from persons engaged in any branch of the trade.

Two questions, one relating to the proof of the extent of the loss, and the other, what extent of loss on "bar-iron" is necessary to subject the defendants, within the meaning of the policy, remain to be considered.

We are asked to set aside the verdict, because the court refused to instruct the jury, that the plaintiff was concluded from claiming any greater partial loss against the defendants than the percentage at which his damage was appraised at the New York custom-house, upon the application of his agent for

a remission of duties proportioned to the loss sustained; he having accepted the remission of duties in that proportion. We cannot see the ground of such an estoppel; how the defendants have been injured by the plaintiff's acceptance of a remission of duties upon the basis referred to, or upon what principle they can claim, that it conclusively establishes the rule of ascertaining, as against them, the amount of the partial loss under the policy. The most that they can ask from it, is the privilege, which they have probably exercised, of commenting upon it before the jury as an admission of the plaintiff, to be gathered from his conduct, as to the limited degree of the damage done to his property.

The remaining question is, however, clearly with the defendants; and if the jury had not specially found that "bundles of rods" were not "bar-iron," the ruling of the court upon the construction of the clause excepting "bar-iron" from any partial loss, would have entitled the defendants to a new trial. As we construe the clause, "bar-iron," together with the other articles enumerated with it in the first portion of the proviso, is insured against no partial loss whatever; and the court erred in qualifying this first portion of the proviso by the words "unless the same amount to twenty per cent, &c." which qualify exclusively the exception from partial loss of hemp or flax. As the jury have found, however, this error could not have injured the defendants, and cannot be allowed to disturb the verdict.

For these reasons this motion must be overruled, with costs, and judgment rendered on the verdict.