EDWARD M. ALFORD, etc.

*v.*

HILTON BUTLER, Commissioner, etc.

367 S. W. 2d 281.

(*Nashville,* December Term, 1962.)

Opinion filed April 3, 1963.

Rehearing Denied May 10, 1963.

Z. D. ATKINS, of counsel, HOUSHOLDER, INGRAHAM, ATKINS & McSWEEN, Nashville, for appellants.

GEORGE F. McCANLESS, Attorney General, MILTON P. RICE, WALKER T. TIPTON, Assistant Attorneys General, Nashville, for appellee.

MR. CHIEF JUSTICE BURNETT delivered the opinion of Court.

The appellant filed this suit to recover a deficiency sales tax assessment made against him by the Commissioner in a sum in excess of $18,000.00, including interest and penalty, which was paid under protest. The Chancellor found against the appellant, and this appeal resulted.

The case presents a comparatively new question, insofar as we know, as to whether or not, when a taxpayer files sales tax returns which do no comply with the rules and regulations of the Department, in that they do not reflect the true gross sales and deductions claimed therefrom, is the Commissioner authorized to determine the gross taxable sales by reference to total receipts as reported by the taxpayer upon his federal income tax return, for the period in question, deducting therefrom the amount of such non-taxable sales as are determinable from the taxpayer's other records made available to the Commissioner, and assess a sales tax deficiency against the taxpayer based on the difference between the figure thus arrived at the amount reflected in the taxpayer's tax returns?

The appellant at the time this assessment was made was the owner and operator of a supermarket in Nashville. At this time the appellee was the Commissioner of Revenue charged with the administration of the sales tax statute and the collection of revenue thereunder.

During the period from June 1, 1957, through November 12, 1960, the appellant filed regular monthly sales tax returns and paid the amounts shown thereby to be due. The return form on which these returns were made was furnished by the Department of Revenue and among other things provided for a statement of the taxpayer's gross sales on Line 1 thereof. On Line 5, the form called for an itemization of various categories of exempt sales. Appellant's returns showed an entry on Line 1 ranging normally from $9,000.00 to $9,500.00, purporting to represent his gross sales for the month for which the report was made. The only entry made on Line 5, which contained five separate categories, was an amount ranging from $2,-000.00 to $2,500.00, appearing in category (b) of Line 5, and reading, "Fertilizer, field and garden seeds, livestock and poultry feed, gasoline, tobacco products and other exempt items." Nothing was ever put in any of the other categories, such as "(a) sales for resale and/or further processing" and "(e) sales in bona fide interstate commerce."

As a result of this lack of answer of various things in Line 5 in May, 1960, the revenue office made a routine examination of appellant's returns. In the course of this examination it was noted that in Line 5(b) deductions, ostensibly representing sales of tobacco products by appellant, were higher than the observed average for a large supermarket. In view of this apparent discrepancy a field

examiner was assigned to verify this deduction and further check any sales for resale from appellant's records.

This field examiner in June, 1960, was referred to the appellant's accountant, who appellant said had his records. When this field examiner verified these tobacco deductions by totaling appellant's tobacco purchases and applying the customary markup this examiner attempted to verify the appellant's stated gross sales. He discovered by this examination that appellant's records in the possession of this accountant were insufficient to establish gross sales as such, said records consisting only of a yellow work sheet which covered a few months, some check stubs and invoices representing purchases by appellant. This examiner was then given by the accountant's wife receipts figures from appellant's federal income tax returns for the years in question together with other figures from said federal returns representing appellant's beginning and ending inventories and purchases for each year.

This examiner determined that the appellant's total receipts entry on said federal return approximated the result reached by applying a 17-18 per cent markup to the gross purchase price.

Using the total receipts figures as shown on the federal return this examiner undertook to, what is called in the record, "back out" appellant's gross sales. From said total receipts entries he subtracted the exempt tobacco sales, the Tennessee sales tax and the gross sales as shown by the appellant's sales tax returns. This produced a gross sales deficiency of approximately $11,000.00 a month. Then it was that the Department representative undertook to account for this deficiency.

In the process of this investigation he learned that appellant as a part of his business handled American Express money orders. He was furnished true figures for the year 1959 only. These were allocated by month upon a percentage basis and resulted in a reduction of the gross sales deficiency of some $4,500.00 a month.

While this department representative was in the process of trying to "back out" the appellant's gross sales deficiency, appellant's store burned destroying completely everything within it, including what records were there. This fire happened on November 12, 1960, in the early morning.

At the time of the fire the appellant, at the Department representative's request, was trying to procure statements from out-of-state customers to whom appellant claimed to have made sales in interstate commerce of considerable quantities of hams. Some statements were obtained, but they contained little of a specific nature with respect to the amounts of such purchases for any specified period.

Before this fire on November 12, 1960, the Department through its various representatives had dealt almost entirely with the appellant's accountant. They were given no figures with respect to appellant's ham business other than the totals of checks written by the appellant in the purchase of hams during the year, 1959. These, together with the allowance for the customary markup, aggregated in excess of $20,000.00.

Based upon appellant's experience at a new store which he opened after the fire the Department determined that twenty-five (25%) per cent of the sales of hams by the

appellant prior to the fire were interstate commerce sales. They thus accordingly divided the total amount of $23,-000.00, above, by twelve and allowed twenty-five (25%) percent of the result in further reduction of appellant's per month gross sales deficiency.

At the time of the fire the Revenue Department through its various agents was undertaking to check out the remainder of the difference between the total receipts shown on appellant's federal income tax returns. Said differences amount to approximately $659,000.00, and the accountant contended these represented sales for resale to restaurants, motor courts, etc. This accountant provided the Department with a list claiming amounts sold per week to various customers. When these representatives of the Department checked out some of these by contacting the customers, it was found that the amounts claimed did not jibe with the customers' statements. The Department by checking out claimed sales for resale against customers' statements, and allowing the latter, arrived at an average of $573.00 per month, which was used further to reduce the appellant's gross sales deficiency.

After allowance of all deductions the Departmen estimated a deficiency in gross sales of some $5,500.00 to $6,-000.00 per month for the audit period. Upon the basis of these figures they arrived at a tax deficiency in excess of $17,000.00, including interest and penalty. As a result of this in April, 1961, the Revenue Department made a deficiency assessment in this amount upon the condition that the appellant forego any protest thereof. Appellant refused to do so and petitioned the Department for a formal hearing, which was denied. The Department then

through its representatives, made a demand upon the appellant for in excess of $27,000.00, which amount represented the tax, penalty, interest, etc., upon the gross sales deficiency as established in the audit without any allowance for any of the claimed interstate ham sales or claimed sales for resale.

When this $27,000.00 assessment was made the appellant filed a suit in Chancery Court for the purpose of enjoining the collection, which suit was dismissed and no appeal taken therefrom. Following the dismissal of this suit to enjoin this collection, the Revenue Department issued a citation to the appellant to appear at a formal hearing and produce books, records, papers, etc., as might prove his liability for the period in question. At this hearing appellant appeared in person and by counsel and produced witnesses in his behalf. This testimony was to the effect that appellant had in his possession prior to the fire records regarding the sale of these hams and sales for resale which would have accounted for the gross sales deficiency established by this audit.

There were also produced at this hearing numerous ex parte statements, some verified by oath and some unverified, from former customers stating approximately how much merchandise had been purchased by them for resale purposes during the period of this audit. All of these statements were admitted by the Department and appellant was allowed to produce further statements at any time prior to the final determination of the matter.

Shortly after this hearing the Department allowed the appellant credit for all claimed deductions of which specific proof was introduced at this hearing. By this action the assessment was reduced to some $18,000.00 which

was demanded and paid under protest and this suit brought to recover it.

The case was heard on bill, answer and stipulation of facts, which included the record of the administrative hearing and shows substantially as above recited.

■ This suit involves the application of various Sections of the Sales Tax Statute, sec. 67-3001 et seq., T.C.A. Of course, this tax is a privilege tax upon the privilege of selling tangible personal property at retail in this State. *Hooten v. Carson,* 186 Tenn. 282, 209 S.W.2d 273. Section 67-3022, T.C.A., provides that the tax shall be paid monthly by dealers who shall transmit each month to the appellee, Commissioner herein, returns upon forms that are prescribed and prepared by the Department for this purpose. These forms are provided with instructions by the Commissioner to prepare the forms (fill them out) to assure the full collection and accounting for taxes under sec. 67-3043, T.C.A.

The Commissioner is likewise given the power under sec. 67-3045, T.C.A., to publish and make reasonable rules and regulations not inconsistent with the Act. As a result of this Section there has long been in use and published what is known as Tax Regulation 74(a) and (b), which provides in effect that both sales and use tax reports shall be made on sales whether they are exempt or not, and that if any of them are exempt then the amount of such exempt sales may be claimed as exempt, but these exemptions must be included in the gross sales on the report that is furnished by the taxpayer, and listed by categories as exempt from tax. This includes sales for resale, sales in bona fide interstate commerce, sales on specifically exempt items and sales to exempt vendees.

This regulation likewise requires that adequate records must be maintained to reconcile any difference between the receipts and the receipts subject to a tax. Obviously, under such a regulation, and naturally it must be so, the taxpayer insofar as this Act is concerned, and his obligation thereunder, is more or less that of a bookkeeper for the Department of Revenue. Subsequent code sections, such as sec. 67-3034, T.C.A., require the dealer to keep records, books of accounts, etc., and sec. 67-3035, T.C.A., requires the dealer to keep a complete record of tangible personal property sold.

■ What we said in the outset hereof as to the background of this assessment, and what we have just said with reference to the requirements of the Act, show the fallacy or the failure of this taxpayer to comply with the requirements of the statute. "It is a common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally; * * *" *Barlow v. United States*, 7 Pet. 404, 411, 32 U.S. 404, 411, 8 L.Ed. 728. Thus ignorance of these things will not excuse the taxpayer from what has been said above and what will hereinafter be said.

One of the most important Sections of this Act, and the one that particularly applies herein, is sec. 67-3029, T.C.A. This Section provides in effect that if a dealer makes a grossly incorrect report the Revenue Department shall have the duty of estimating for the taxable period the retail sales of tangible personal property made by the dealer and assessing and collecting the tax plus accrued interest and penalty, and such assessment "shall be considered prima facie correct, and the burden to show the contrary shall rest on the dealer."

Of course, from what was said in the outset of this opinion, it clearly apeared to the Department of Revenue and its investigators that the appellant did not make available and keep proper records so as to show the sales made and proper allowances for unassessable things. This statement is substantiated if on nothing more than on the difference between the federal tax returns and the return made to the Revenue Department. Under such a situation did the Department properly assess the appellant with the deficiency as shown, made upon such records as were had after the fire, when an investigation was being made of this supermarket some five months prior to the fire when records were not and could not be claimed to have been destroyed by the fire?

It is without dispute in this record that the appellant in filing his returns with the Department did not include the gross sales shown thereon any sales for resale or sales in interstate commerce, and did not show any itemization of such categories of sales in the space provided therefor, above referred to. This in itself amounted to filing a false return, because the regulations with which appellant was familiar required that this be done, and the filing of such a return as was filed failed to properly tell the Commissioner the nature and extent of the business which appellant was conducting.

These returns made by the appellant to the Department were regular on their face and yet such returns apparently were made to mislead, as for instance the question of the tobacco sales that are referred to heretofore in this opinion. The appellant was conducting a retail grocery business, and according to these returns was making no exempt sales except that of tobacco. These re-

turns likewise indicated a volume of more than $5,000.00 a month less than his federal returns show. Had these sales been reported as is required on the same basis that he made his returns to the federal government in his federal tax returns it would have given the Department an opportunity to check these things and, while all records were present, to compare them and do what was right about the matter. It is argued, and it was argued at the bar of this Court, that this difference between the federal income tax return and that made to the Revenue Department represented exempt sales for resale and sales in interstate commerce. Of course, if these sales for resale and sales in interstate commerce had been made on the returns to the Department, the Department then could have had an opportunity to check the question, since it was a rather large percentage of the business thus conducted and could have asked the appellant to substantiate this long prior to any fire. The appellant didn't have to be asked to do it. He should have done it anyway under the Sales Tax Act.

It is clearly indicated in the record that the auditor, who was the principal and practically the only contact man of the appellant with the Revenue Department prior to the fire, knew that this investigation was being made to reconcile appellant's records with his returns. Other clients of this auditor had been subject to the same kind of audit—and this auditor knew, too, that it was necessary to substantiate any claimed deductions including those claimed herein as sales for resale and for sales in interstate commerce. This auditor though did not furnish the necessary information. He only produced a total sales figure of the total receipts as shown on the federal returns, and the only exempt sales totals he offered were

hypothetical ones attempting to placate the difference in the amounts shown on the federal as against state returns. The record also shows that the appellant himself knew these things were being questioned before the fire. It was after the fire though that he said he had original books of entry showing these claimed exempt sales which had been destroyed by the fire. Naturally and by obligation of the statute the Department of Revenue made an arbitrary assessment under the circumstances hereinbefore indicated, and they were justified and required to do so. After making such an assessment they have, it seems to us, logically allowed every possible deduction at the hearing before the Commissioner, which the facts and circumstances would justify. This statement is made and becomes more obvious by reason of a review of the factual background as set out heretofore in this opinion. Of course, the best information would be the appellant's own records, his books of entry, etc., which he should keep, but where these are not shown or produced (the appellant had an opportunity to do so five months prior to this fire) the Department can only use what information is available. Such a return as heretofore pointed out under such a deficiency assessment in sec. 67-3029, T.C.A., is prima facie correct and the burden is on the taxpayer to disprove it. The taxpayer clearly herein has not carried this burden.

The appellant argues very forcibly through his able brief, and he so argued at the bar of this Court, that the representatives of the Revenue Department in handling this matter were rather arbitrary. The State concedes that the Department representative in handling the matter failed to merit commendation. As we see it though this has little bearing on the question before us. We are

not trying to excuse or justify the Department's manner of handling the matter one way or the other.

The appellant argues very forcibly that the manner in which the Department arrived at the deduction of taxes for hams sold in interstate commerce or for resale as above set out is an improper method to use. It must be remembered though that the appellant never at any time prior to this fire produced any records of his out-of-state sales. When this present record was made up he testified that he had proper records at all times prior to this fire. These records were not presented then, yet the regulations of the Department require that they should have been presented and this obligation was on the taxpayer, the appellant, to produce and show these things, and it was not up to him to wait until some agent of the Department came inquiring about this or that or the other thing. It was up to him to produce and show these records when an audit was being made in addition to setting this out at least to some extent on the forms furnished him by the Department as hereinbefore discussed.

It is very forcibly argued by the appellant that the Department failed to give him a ten day notice, as required by sec. 67-3030, T.C.A., requiring him to appear before the Department with his books, etc. "The reason that it does not satisfy requirements of the State is that the very intent and purpose of the Act is to provide the complainant with a hearing before an assessment is made and the assessment is then given the full weight of the law and as being a prima facie correct figure." Page 17, appellant's brief and assignment of error.

■ This Section of the Code, we think, was really for the benefit of the Commissioner and his Department be-

cause where a taxpayer or dealer failed to make a return, or filed one which was questioned, false or fraudulent, then the Department had a right upon this ten day notice to require him to bring all his books, etc., in to the Department and prove these things. Obviously this is a greater burden on the taxpayer than it is on the Department, because he has to bring all those things in and cart them here, there and yonder and everywhere else. Thus there is nothing in this record to show any constitutional violation as claimed by the appellant that the Department didn't give this taxpayer notice to bring these things in before an assessment was made. This assessment was made and, as heretofore indicated, after making these checks and things, and, after the taxpayer had had an opportunity in such a hearing as provided in this Section to show these various things that he now claims rightfully deductible, the Department allowed him every proved deduction. This Section by a very careful study shows clearly that this is not the exclusive method which the Commissioner may use to determine such a tax liability. Too, when we read this Section with the other provisions of the Sales Tax Statute it is very plain that this is an extraordinary remedy which is brought about by reason of acts of the dealer. It must be remembered that the returns of this appellant were regular on their face and the Revenue Department had no clear reason to doubt their integrity until an examination was made by the field examiners, who then determined that the answers to the various questions on the forms were not being made right or that there was something wrong.

We have read the two cases counsel for the appellant cites in support of this contention, that is, that this assessment was made without giving notice as required by sec.

67-3030, T.C.A., and although a hearing was had thereafter it does not cure the assessments made prior to giving notice. These cases are *Johnson v. Diefendorf,* 56 Idaho 620, 57 P.2d 1068; and *Morrison-Knudsen Co. v. State Board of Equalization of Wyoming,* D.C., 35 F. Supp. 553. A careful reading of these cases shows that really they are not in point under the factual situation here developed. The State though cites the case of *People v. Schwartz,* 31 Cal.2d 59, 187 P.2d 12, which does fit this situation very much like a glove. It is almost a "spotted cow" case. The California court held that the Commissioner there could and had a right to determine the true sales by the best means available to him. In this California case the finding in favor of the taxpayer in the lower court was reversed and he was held liable for the tax. Briefly, the taxpayer in that case filed returns with which the tax people were not satisfied. An investigation of the books and records was made and it was revealed that the bank deposits exceeded his gross receipts, as shown by his sales journal. It was further shown that the taxpayer's disbursements likewise exceeded the amount of sales reported on the return. His business was the sale of merchandise. The taxing authority treated as additional taxable sales the difference between the amount of sales reported and the amounts disbursed. That court among other things said:

"* * * His testimony is not a substitute for the records required by statute and does not overcome the presumptively correct assessment of the State which is based upon the taxpayer's records."

This statement answers the argument of the appellant here that statements made by the appellant showed that

he had sufficient books, records, etc., and his preacher testified as to his good character, etc. We though agree with the Chancellor that this testimony does not overcome the factual situation as found by this Department as shown heretofore in this opinion.

█ The argument is made which ties in with what is said above and quoted from the appellant's brief that it was wrong for the Commissioner to make an assessment before he had a formal hearing after due notice to the taxpayer. As we see it though this is not the law. In the first place, if it were, the statute would be almost impossible of enforcement. In the second place, the statute, sec. 67-3029, T.C.A., gives the Commissioner full authority, with no mention of a hearing being had therein, to estimate a dealer's tax whenever it shall appear that he has filed no return, or one which is false or fraudulent. We have said repeatedly herein that these returns which were filed were purportedly valid but upon an investigation it was found that they were false in that they did not reveal the true sales of this appellant or specify the deductions therefrom upon which he relied. This being true, the Commissioner estimated the appellant's tax based as we have said herein on the best available information to him. In making this assessment the taxpayer, the appellant, was given every opportunity to supply by any means possible substantiation of the deductions which he claimed.

Of course, much of the argument around these things is based upon the attempted $17,000.00 assessment and the $27,000.00 assessment, neither of which was ever collected. The State concedes in doing these things there was some arbitrary action on the part of the Department,

but since neither one was collected and both abandoned and the man given credits under the proof that he had, the appellant was not prejudiced thereby. The tax assessment that was made was made after appellant had every opportunity to show the Revenue Department's representative records which would justify the amounts which he claimed should not be charged.

After a careful consideration of this rather complicated factual situation we are satisfied that the Chancellor reached the right conclusion. His judgment is accordingly affirmed.

### Opinion on Petition to Rehear

We have before us a courteous, dignified and forceful petition to rehear. We have carefully read this petition and the authorities therein cited along with our original opinion herein. After having done so we have this petition for determination.

The petition raises no new questions. It is conceded that this is a reargument of two questions raised originally but made in a different way. We answered these questions in our original opinion beginning at next to the last paragraph on page 16 thereof. After again considering the matter we are thoroughly satisfied that we have correctly answered these propositions in our original opinion. Counsel cited in this petition the cases of *In re Chicago Rys. Co. (People of the State of Illinois v. Sullivan)* 7 Cir., 175 F.2d 282, and *Ricardo, et al. v. Ambrose,* 3 Cir., 211 F.2d 212, as additional authority, which it is contended support his position on these questions. We carefully considered these questions and have no complaint to find with the opinions just referred to and

what they say. The factual situation under these opinions does not in any way run parallel with the factual situation in the case before us. We are satisfied for the reasons stated in our original opinion that these two assignments were properly overruled therein.

After a thorough consideration of the petition to rehear, we must overrule it.