# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2467

_____

United States of America,      *

     *

     Plaintiff - Appellant,      *

     *    Appeal from the United States

v.      *    District Court for the

     *    Western District of Missouri.

Louie A. Ferro, Jr.; Louie A. Ferro, Sr.;      *

Wilbur Swift; Kevin D. Staley,      *

     *

     Defendants - Appellees.      *

_____

Submitted: January 9, 2001

Filed: June 7, 2001

_____

Before LOKEN, HEANEY, and BYE, Circuit Judges.

_____

LOKEN, Circuit Judge.

The government appeals the dismissal of its fifteen-count indictment against Louie A. Ferro, Jr., Louie A. Ferro, Sr., Wilbur Swift, and Kevin D. Staley (collectively referred to as "defendants"). The indictment charged defendants with mail fraud, transporting fraudulently obtained pharmaceuticals in interstate commerce, money laundering, and conspiring to commit these offenses in violation of 18 U.S.C. §§ 371, 1341, 1956(a)(1)(A), 1956(h), and 2314. All the offenses are based upon the government's allegation that defendants defrauded various pharmaceutical sellers into

granting substantial discounts by misrepresenting that defendants were purchasing for the "own use" of the Ferros' institutional pharmacy or its customers. The district court dismissed the indictment for failure to state an offense, finding the "own use" misrepresentations to be immaterial as a matter of law.[1] We review dismissal of an indictment for failure to state an offense *de novo.* See United States v. Zangger, 848 F.2d 923, 924 (8th Cir. 1988). We reverse and reinstate the indictment.

The indictment alleges that Home Care Pharmacy ("HCP"), a for-profit institutional pharmacy owned by the Ferros, purchased pharmaceuticals at substantial discounts by misrepresenting to pharmaceutical sellers that HCP was buying for its "own use," or for the "own use" of its nursing home customers. Contrary to these representations, HCP then resold the majority of the discounted pharmaceuticals to various commercial wholesalers. Defendant Swift was associated with one of the wholesalers that purchased discounted pharmaceuticals from HCP. Defendant Staley managed the operations of FKC, Inc., a wholesale company established by the Ferros to assist in distributing the discounted pharmaceuticals. The indictment alleges that defendants resold in excess of $10 million worth of discounted pharmaceuticals between May 1995 and January 1999.

Defendants moved to dismiss the indictment for failure to state an offense. They did not argue that the indictment fails to allege the elements of a mail fraud offense, including materiality, or that it fails to adequately inform them of the charges they must defend -- the typical grounds for challenging the sufficiency of an indictment. See, e.g., Hamling v. United States, 418 U.S. 87, 117 (1974). Rather, defendants argued that the

---

[1]In Neder v. United States, 527 U.S. 1, 25 (1999), the Supreme Court held that materiality is an element of the federal mail fraud, wire fraud, and bank fraud statutes. The government concedes it must prove material misrepresentations to convict defendants of the three mail fraud counts. The government does not challenge the district court's conclusion that all the remaining counts of the indictment require proof of mail fraud.

alleged "own use" misrepresentations to pharmaceutical sellers were immaterial as a matter of law, and that the sellers were engaged in Robinson-Patman Act violations that should insulate defendants from charges of criminal fraud. A brief review of federal price discrimination law and pricing practices in the pharmaceutical industry is necessary to an understanding of these issues.

The Robinson- Patman Act makes it unlawful "to discriminate in price between different purchasers of commodities of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition." 15 U.S.C. § 13(a). The Non-Profit Institutions Act exempts from the Robinson-Patman Act goods purchased "for their own use by schools, colleges, universities, public libraries, churches, hospitals, and charitable institutions not operated for profit." 15 U.S.C § 13c. The complex question of "own use" was addressed in detail by the Supreme Court in Abbott Laboratories v. Portland Retail Druggists Association, 425 U.S. 1, 14 (1976). The Court concluded its opinion by cautioning that a pharmaceutical seller who "seeks to enjoy . . . the benefits provided by § 13c" should "routinely obtain[] a representation from its hospital customer as to the use of the products purchased." 425 U.S. at 21.

Pharmaceutical sellers grant deep discounts to non-profit customers who provide "own use" certifications. Like any two-tiered pricing system, this gives purchasers who qualify for the discounted prices an incentive to create a "diversion market" in which they resell pharmaceuticals purchased at a discount in competition with pharmacies and other retailers who purchased at much higher wholesale prices. See generally United States v. Costanzo, 4 F.3d 658, 659-60 (8th Cir. 1993); United States v. Weinstein, 762 F.2d 1522, 1533 (11th Cir. 1985), cert. denied, 475 U.S. 1110 (1986) (export diversion market). The government's theory is that defendants purchased pharmaceuticals at unwarranted discounts by making "own use" misrepresentations and then resold those products in the diversion market.

Defendants moved to dismiss on the following theory: pharmaceutical sellers seek "own use" representations for the sole purpose of determining whether a prospective purchaser qualifies for the Non-Profit Institutions Act exemption and therefore may be granted a price discount free of Robinson-Patman Act compliance concerns. The exemption is limited to non-profit organizations, and HCP disclosed to sellers that it was a for-profit company. Because sellers knew that sales to HCP were not exempt under the Non-Profit Institutions Act, any "own use" misrepresentations were immaterial to their decisions to sell at discounted prices. The discounts simply reflected the sellers' intentional Robinson-Patman Act violations; no fraud occurred.

Though the district court accepted this theory, we conclude it is seriously flawed. The critical flaw is defendants' assumption that a price discount on pharmaceuticals is either exempt from the Robinson-Patman Act, or it is unlawful.[2] To the contrary, the Act does not declare all non-exempt price differentials unlawful. Determining whether a price discount will result in unlawful price discrimination requires careful analysis of difficult, often-litigated issues such as whether the discount may substantially lessen competition at any level of competition, whether the discount is cost justified, and whether it is granted to meet lawful competition. See, e.g., Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 219-20 (1993).

We know from prior cases that pharmaceutical sellers often grant discounts to institutional customers such as hospitals, health maintenance organizations, and nursing homes, *without regard to whether they are non-profit or for-profit purchasers.* See Costanzo, 4 F.3d at 659; In re Brand Name Prescription Drugs Antitrust Lit., 186 F.3d

---

[2]Defendants' materiality theory was presented to the district court by Dennis S. Corgill, Associate Professor of Law at Widener University. The record before us contains no foundation for the extraordinary legal opinions offered by this witness, opinions that would find little or no support in Robinson-Patman Act treatises and judicial opinions.

781, 783-84 (7th Cir. 1999). <u>See generally</u> LEVY, THE PHARMACEUTICAL INDUSTRY: A DISCUSSION OF COMPETITIVE AND ANTITRUST ISSUES IN AN ENVIRONMENT OF CHANGE 74-92 (FTC Bureau of Economics Staff Report, Mar. 1999). This suggests that sellers perceive other bases for justifying the discounts under the Robinson-Patman Act, and therefore that the Non-Profit Institutions Act exemption is not the only determining factor in making such sales. This further suggests that, even when dealing with a for-profit institutional customer, a seller may wish to know, for Robinson-Patman Act compliance purposes, whether the customer is purchasing for its "own use." In these circumstances, the materiality of an "own use" misrepresentation may not be determined as a matter of law, and the district court erred in dismissing the indictment.

The district court also erred procedurally in taking up this issue prior to trial. In <u>United States v. Gaudin</u>, 515 U.S. 506, 523 (1995), the Supreme Court held that, when materiality is an element of a criminal fraud offense, the question of materiality must be submitted to the jury. Prior to <u>Gaudin</u>, our court considered materiality to be an issue of law for the court in a criminal fraud prosecution, and we approved of the district court holding a pretrial hearing on this question and dismissing the indictment if the government failed to establish that an allegedly fraudulent statement was material. <u>See</u> <u>United States v. Bailey</u>, 34 F.3d 683, 687 (8th Cir. 1994), applying <u>United States v. Lasater</u>, 535 F.2d 1041 (8th Cir. 1976). After <u>Gaudin</u>, however, this procedure is no longer appropriate, because materiality is an issue for the jury. Now, so long as the indictment contains a facially sufficient allegation of materiality, federal criminal procedure does not "provide for a pre-trial determination of sufficiency of the evidence." <u>United States v. Critzer</u>, 951 F.2d 306, 307-08 (11th Cir. 1992). As the Third Circuit said in <u>United States v. DeLaurentis</u>, 230 F.3d 659, 661 (3d Cir. 2000):

> In civil cases, of course, the summary judgment procedures contemplated by Federal Rule of Civil Procedure 56 may be utilized to test, pretrial, the sufficiency of the evidence to establish triable issues of

fact; but there is no corollary in criminal cases. The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. . . . [W]e simply cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be.

We acknowledge that an occasional case, such as United States v. DeSantis, 134 F.3d 760, 764 (6th Cir. 1998), has recognized the *possibility* that the government's well-pleaded allegation of materiality might be so factually weak as to permit a pretrial determination that no reasonable jury could make the requisite finding of materiality. But defendants have cited no decision since Gaudin in which a federal fraud indictment was dismissed on this ground prior to trial. Whatever the theoretical possibility that such a case may arise in the future, in this case we think it clear there must be a trial on the issue of materiality at which the government may present pharmaceutical seller witnesses to testify as to the materiality of any "own use" misrepresentations the government is able to prove.

The judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-