# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2914
_____

United States of America

*Plaintiff - Appellee*

v.

Justin Dwight Sholley-Gonzalez

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: December 18, 2020
Filed: May 10, 2021
_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.
_____

SMITH, Chief Judge.

An Iowa state court issued a protection order against Justin Dwight Sholley-Gonzalez. In issuing the order, the court did not expressly designate the protected person as an "intimate partner" under 18 U.S.C. § 922(g)(8), though the protected person was in fact an intimate partner. Under § 922(g)(8), a person subject to a court

order protecting an intimate partner is restricted from possessing firearms and ammunition.

Sholley-Gonzalez attempted to purchase a firearm. While doing so, he failed to indicate on a federal firearm-transaction form that he was subject to a court order protecting an intimate partner. Law enforcement believed his omission violated 18 U.S.C. § 922(a)(6). As a result, law enforcement obtained and executed a search warrant for Sholley-Gonzalez's house. The search revealed shotgun ammunition.

Sholley-Gonzalez was charged and indicted under §§ 922(g)(8) and 922(a)(6). He moved to dismiss the indictment for failure to state an offense because the protection order against him did not affirmatively indicate it protected an intimate partner. The district court denied his motion and convicted him on both counts after a bench trial. After his conviction but before sentencing, Sholley-Gonzalez moved for acquittal or a new trial based on the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), which clarified that the government must prove that the defendant had knowledge of his restricted status. Sholley-Gonzalez argued that *Rehaif* invalidated his conviction because the government had not proved that he knew that his status restricted his ability to possess firearms and ammunition under § 922(g). The district court denied his motion. At sentencing, Sholley-Gonzalez argued that his sentence should be reduced pursuant to the sporting-use reduction in § 2K2.1(b)(2) of the United States Sentencing Guidelines. The district court declined to apply the reduction.

Sholley-Gonzalez appealed. We affirm the district court's decisions regarding Sholley-Gonzalez's motions but remand for resentencing as to district court's application of the sporting-use reduction.

## I. *Background*

In October 2017, an Iowa court issued a protection order that "restrained [Sholley-Gonzalez] from committing any acts of abuse or threats of abuse" and "from any contact with [S.O.]." Stipulation, Ex. 1, at 1, *United States v. Sholley-Gonzalez*, No. 4:18-cr-00090-RGE-CFB-1 (S.D. Iowa 2019), ECF No. 52-2. The first page of the order form provided, "Warnings to Defendant," in bolded font. *Id.* (emphasis omitted). One of these three warnings stated, "Federal law provides penalties for possessing, transporting, shipping, or receiving any firearm or ammunition (18 U.S.C. § 922(g)(8))." *Id.* (emphasis omitted).

The second page of the order form included a list of items to be checkmarked if applicable. The first section provided two mutually exclusive boxes to be checked, based on the identity of the protected party. One box was to be checked if the protected party was an "intimate partner" "as defined in 18 U.S.C. § 921(a)(32) ('"intimate partner" means, with respect to a person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabited with the person')." *Id.* at 2. The other box was to be checked if "the relationship status of the defendant and protected party is other than the federal 'Intimate Partner' definition." *Id.* Neither box was checked.

Further, if the court had checked the "intimate partner" box, the form explained that "the court must check box 5, prohibiting the defendant from possessing firearms." *Id.* (emphasis omitted). Box 5 read, "If checked, the Defendant shall not possess firearms while this order is in effect as a condition of release. . . . The defendant is advised that the issuance of this protective order may also affect the right to possess or acquire a firearm or ammunition under federal law." *Id.* The court did not check box 5.

Although the order form did not indicate the status of S.O. and Sholley-Gonzalez's relationship, their relationship met the federal "intimate partner" definition during the relevant period.

In February 2018, Sholley-Gonzalez went to a Walmart store and attempted to purchase a firearm. An employee said that Sholley-Gonzalez "asked for the 'cheapest gun' Walmart sold," so the employee showed him three 12-gauge shotguns. Final Presentence Investigation Report 6, *United States v. Sholley-Gonzalez*, No. 4:18-cr-00090-RGE-CFB-1 (S.D. Iowa 2019), ECF No. 76. The Walmart employee said that Sholley-Gonzalez attempted to purchase a shotgun, and Sholley-Gonzalez stipulated to that fact as well. As part of the purchase process, Sholley-Gonzalez filled out a mandatory firearm-transaction form. One of the questions on the form asked, "Are you subject to a court order restraining you from harassing, stalking, or threatening . . . an intimate partner . . . ?" Stipulation, Ex. 2, at 1, *United States v. Sholley-Gonzalez*, No. 4:18-cr-00090-RGE-CFB-1 (S.D. Iowa 2019), ECF No. 52-3. Sholley-Gonzalez answered, "No." *Id.* He also purchased a BB gun for his daughter.

In April 2018, law enforcement conducted a warrant-authorized search of Sholley-Gonzalez's home and found 36 rounds of shotgun ammunition, including .410-gauge rounds and 20-gauge rounds. They found no firearms. Relevant to this appeal, Sholley-Gonzalez was indicted on one count of illegally possessing ammunition, based on being subject to a court order protecting an intimate partner, and one count of making a false statement during the purchase of a firearm, based on his answer to the firearm-transaction form.

Sholley-Gonzalez moved to dismiss the indictment for failure to state an offense. He claimed that he "was not subject to a restraining order of a nature prohibiting his possession of firearms or ammunition" because the protection order did not affirmatively identify S.O. as an intimate partner. Br. in Supp. of Mot. to Dismiss at 2, *United States v. Sholley-Gonzalez*, No. 4:18-cr-00090-RGE-CFB-1

(S.D. Iowa 2019), ECF No. 29-1 (emphasis omitted). The district court denied Sholley-Gonzalez's motion for two alternative reasons: (1) The indictment sufficiently pleaded the required elements of the offenses because the sufficiency of the indictment is determined by the face of the indictment, not the underlying evidence; and (2) the protection-order omissions were not fatal to the indictment's sufficiency because § 922(g)(8) requires that the protected party be an intimate partner, not that the court order identify the protected party as an intimate partner.

The case proceeded to a bench trial on stipulated facts, and the district court convicted Sholley-Gonzalez on both counts. Before sentencing, Sholley-Gonzalez moved for a judgment of acquittal or a new trial. Both requests were based on *Rehaif*. *Rehaif*, decided after his conviction, explains that the government must prove that a defendant knows his restricted status under § 922(g). 139 S. Ct. at 2200. The district court denied Sholley-Gonzalez's motion. It held that the *Rehaif* error was harmless because Sholley-Gonzalez knowingly made the false statement that he was not subject to a protection order protecting an intimate partner. Thus, the district court explained that it had already determined Sholley-Gonzalez's knowledge of his status for the § 922(a)(6) conviction. Alternatively, the district court found that Sholley-Gonzalez stipulated to facts that provided sufficient evidence to support the court's knowledge finding.

At sentencing, Sholley-Gonzalez argued that the district court should apply the § 2K2.1(b)(2) sporting-use reduction, which lowers a defendant's offense level to six if the defendant possessed all the firearms and ammunition connected to the firearm offense solely for lawful sporting use. The district court received letters of support for Sholley-Gonzalez from his daughter, girlfriend, cousin, mother, and previous employer. Of those, two mentioned Sholley-Gonzalez's love of hunting and time spent shooting with his daughter. He also offered evidence that he received firearm-hunting licenses on a regular basis from 2007 to 2014 and bow-hunting licenses for

2019 and 2020. And he included pictures of him and his daughter hunting, fishing, and using firearms for lawful sporting purposes.

Sholley-Gonzalez also testified at the sentencing hearing. He testified that he is "an avid hunter" and has engaged in "target shoot[ing]." Sentencing Tr. 17, *United States v. Sholley-Gonzalez*, No. 4:18-cr-00090-RGE-CFB-1 (S.D. Iowa 2019), ECF No. 96. He said he last owned a firearm in 2014 or 2015, though he still went bow hunting, which was consistent with his hunting license records. He had also used firearms in February 2018 for target shooting. When asked about the ammunition that law enforcement found at his house, Sholley-Gonzalez replied that "[i]t was leftover ammunition from previous hunting or target shooting." *Id.* at 19. He said that he "[n]ever" used the ammunition for any reason other than hunting and target shooting and that he had been shooting with his daughter. *Id.* at 20–21. Further, he had never been convicted or charged with an offense involving a firearm.

On cross-examination, the government's questioning highlighted Sholley-Gonzalez's previous offenses. First, it elicited the conduct leading to the protection order: Sholley-Gonzalez stalked S.O., posted nude photographs of her on social media, and created a fake Craigslist profile of S.O. to send men to her house, and he sent food delivery drivers and prostitutes to S.O.'s father's house. Second, Sholley-Gonzalez had pleaded guilty to harassing S.O. in 2017. Third, he had pleaded guilty to assault in 2017. Fourth, Sholley-Gonzalez explained that he had pleaded guilty to assaulting a police officer in 2014, but he asserted that he "provided false testimony" and did not actually commit that crime. *Id.* at 32. The government provided no evidence that Sholley-Gonzalez had possessed this ammunition for nonsporting purposes or that he had ever possessed any firearm or ammunition for nonsporting purposes.

The district court held that Sholley-Gonzalez did not meet his burden to show that the sporting-use reduction applied. The court relied on the contradiction between

Sholley-Gonzalez's statement and the Walmart employee's, Sholley-Gonzalez's prior offenses, and his lack of credibility. And it found that his love of hunting and fishing had nothing to do with the purpose of the ammunition he possessed and the firearm he attempted to possess and that his evidence was unpersuasive because it was self-serving.

The district court concluded by stating that its decision did not turn on whether Sholley-Gonzalez possessed the ammunition for nonsporting purposes or attempted to purchase a firearm for nonsporting purposes. It noted that Sholley-Gonzalez did one or the other for nonsporting purposes, so independently analyzing his conduct would be fruitless, even if the parties had raised the issue. It stated:

> Now, the question of whether or not the shotgun shells versus the firearm, which was possessed for which purpose, the parties haven't broken that down in terms of whether or not there's some argument that one was possessed for a lawful sporting purpose and the other wasn't. Here the standard is that all ammunition and firearms have to be possessed solely for lawful sporting purposes, and the court cannot make that finding.

*Id.* at 41.

The district court calculated Sholley-Gonzalez's offense level as 12 and his criminal history category as VI. Thus, his Guidelines range was 30–37 months' imprisonment, and the district court sentenced him to 30 months' imprisonment. This appeal followed.

## II. *Discussion*

Sholley-Gonzalez seeks reversal, asserting three errors by the district court. First, he avers that the indictment against him should have been dismissed because it failed to state an offense under § 922(g). Second, he contends that, based on

*Rehaif*, he should have been granted a judgment of acquittal or a new trial. Third, he argues that § 2K2.1(b)(2)'s sporting-use reduction should have applied to his sentencing calculation.

## A. *Failure to State an Offense*

Sholley-Gonzalez mounts two arguments that the indictment failed to state an offense. First, he argues that the protection order's failure to affirmatively identify S.O. as an intimate partner means it falls short of § 922(g)(8)'s requirements. Second, he argues that the absence of a designation of S.O. as an intimate partner violated his right to notice protected under the Constitution's Due Process Clause.

We review the district court's denial of a motion to dismiss an indictment for failure to state an offense de novo. *United States v. Flute*, 929 F.3d 584, 587 (8th Cir. 2019). An indictment survives a motion to dismiss for failure to state an offense if "the indictment contains a facially sufficient allegation." *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001). Sholley-Gonzalez urges us go beyond the indictment and review the underlying protection order, but when courts go beyond the face of the indictment, they are testing the sufficiency of the evidence, not whether the indictment stated an offense. *Id.* However, challenges to the evidence's "sufficiency [are] tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29," not by a "dismissal of an indictment on the basis of predictions as to what the trial evidence will be." *Id.* (quoting *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000)). "[F]ederal criminal procedure does not 'provide for a pre-trial determination of sufficiency of the evidence.'" *Id.* (quoting *United States v. Critzer*, 951 F.2d 306, 307–08 (11th Cir. 1992)).

We have explained that

[a]n indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant

of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution.

*United States v. Steffen*, 687 F.3d 1104, 1109 (8th Cir. 2012) (quoting *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993)).

### 1. *Section 922(g)(8)'s Requirements*

Here, the indictment is facially sufficient despite the protection order not identifying S.O. as an intimate partner. Section 922(g)(8) simply does not require that the court-order form identify the protected party as an intimate partner. Section 922(g)(8)(B) requires that the "court order . . . restrain[] such person from harassing, stalking, or threatening an intimate partner." The text demands only that the order protect an intimate party in fact. It does not require that the court order "include[] a finding" that the protected party is an intimate partner or "by its terms" identify the protected party as an intimate partner, as it requires for certain findings in § 922(g)(8)(C). Section 922(g)(8)(C) requires the court order to

> (i) *include*[] *a finding* that such person represents a credible threat to the physical safety of such intimate partner . . . ;or
>
> (ii) *by its terms* explicitly prohibit[] the use, attempted use, or threatened use of physical force against such intimate partner . . . that would reasonably be expected to cause bodily injury . . . ."

(Emphasis added). No similar language is included regarding an "intimate partner" finding. Thus, the indictment need not include such an allegation either.

Looking to this indictment's face, it pleaded the essential elements of a § 922(g)(8) offense: (1) Sholley-Gonzalez "was subject to a court order," (2) the order was "issued after a hearing of which he received actual notice, and at which

he had an opportunity to participate," (3) the order "restrain[ed] him from harassing, stalking, or threatening an intimate partner," (4) the order "by its terms explicitly prohibited the use, attempted use or threatened use of physical force against such intimate partner," and (5) Sholley-Gonzalez "knowingly possess[ed] . . . a firearm" that was "in and affecting interstate commerce" and "knowingly possess[ed] ammunition" that was "shipped and transported in interstate commerce." Indictment at 1, 4, *United States v. Sholley-Gonzalez*, No. 4:18-cr-00090-RGE-CFB-1 (S.D. Iowa 2019), ECF No. 1.

## 2. *Due Process*

Sholley-Gonzalez also argues that the indictment failed to state an offense because the order form did not affirmatively identify that S.O. was an intimate partner, thus denying him due process. We disagree.

Sholley-Gonzalez relies on *Lambert v. California* for the proposition that when "[a] law . . . punishe[s] conduct which would not be blameworthy in the average member of the community," due process requires "actual knowledge . . . or proof of the probability of such knowledge and subsequent failure to comply . . . before a conviction . . . can stand." 355 U.S. 225, 229 (1957); Appellant's Br. at 19. But we have already addressed *Lambert*'s interplay with § 922(g)(8) in a similar case. In *United States v. Miller*, Miller claimed that the face of the restraining order against him provided insufficient notice that he was restricted from possessing firearms. 646 F.3d 1128, 1131 (8th Cir. 2011). Specifically, the district court did not check a box on the order form indicating that Miller would be restricted from possessing firearms, though it did identify the protected party as an intimate partner. *Id.* at 1130. Miller also claimed that the state court had told him he would not be restricted from possessing firearms. *Id.* at 1131.

In *Miller*, we held that "although Miller's conduct [i.e., possessing a firearm] may not be '*per se* blameworthy'" for an average citizen, he nevertheless had

sufficient knowledge that he would be restricted from possessing firearms because "possession of a firearm, especially by someone subject to a restraining order, 'is . . . a highly regulated activity, and everyone knows it.'" *Id.* at 1132 (quoting *United States v. Hutzell*, 217 F.3d 966, 968–69 (8th Cir. 2000)). We also found several other factors that cut against Miller: (1) the restraining order's front page "warned that federal law restricts the possession of firearms by individuals subject to restraining orders," (2) the next page indicated the protected party was an intimate partner, and (3) the order "restrained him from threatening, assaulting, stalking, molesting, attacking, harassing, or otherwise abusing [the protected party], g[iving] Miller reason to be on notice that his conduct was subject to increased government scrutiny." *Id.* at 1131–33.

Most of the factors that gave Miller sufficient notice are present here. First, possession of firearms and ammunition, especially by people with a restraining order against them, is highly regulated and "everyone knows it." *Id.* at 1132. Second, the first page of the protection order against Sholley-Gonzalez provided a "Warning[] to Defendants" that "[f]ederal law provides penalties for possessing, transporting, shipping, or receiving any firearm or ammunition (18 U.S.C. § 922(g)(8))." Stipulation, Ex. 1, at 1 (emphasis omitted). And third, the order restrained him "from committing any acts of abuse or threats of abuse" and "from any contact with [S.O.]," *id.*, giving him "notice that his conduct was subject to increased government scrutiny." *Miller*, 646 F.3d at 1133. Further, the order form provided the federal definition of "intimate partner" and explained that when an intimate partner was the subject of the order, the defendant's right to possess firearms and ammunition was restricted. Stipulation, Ex. 1, at 2. Sholley-Gonzalez could have easily read the definition on the order form and known that S.O. was an intimate partner and that he was restricted from firearm and ammunition possession.

As in *Miller*, Sholley-Gonzalez had sufficient warning that the state court's protective order limited his ability to possess firearms.

## B. *Rehaif*

"We review the denial of a motion for judgment of acquittal de novo." *United States v. Sainz Navarrete*, 955 F.3d 713, 718 (8th Cir. 2020). We review the "facts in the light most favorable to the verdict" and will affirm if "a reasonable juror could have found the defendant guilty of the charged conduct beyond a reasonable doubt." *Id.* (quoting *United States v. Clark*, 668 F.3d 568, 573 (8th Cir. 2012)). And "[w]e review the denial of a motion for a new trial for an abuse of discretion," reversing the district court's decision "only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred." *Id.* (quoting *United States v. Anwar*, 880 F.3d 958, 969 (8th Cir. 2018)).

In *Rehaif*, the Supreme Court held "that in a prosecution under 18 U.S.C. § 922(g) . . . , the Government must prove . . . that [the defendant] knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. The Court, however, did not express "what precisely the Government must prove to establish a defendant's knowledge of status in respect to other § 922(g) provisions not at issue [in the case]," such as § 922(g)(8). *Id.* It did explain that the knowledge-of-status element will not usually be "burdensome" to prove because "knowledge can be inferred from circumstantial evidence." *Id.* at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)).

Here, the district court made no finding under § 922(g)(8) as to whether Sholley-Gonzalez knew his status. Although *Rehaif* had not been decided when the district court convicted Sholley-Gonzalez, it was error to not make a finding about Sholley-Gonzalez's knowledge of status. *Cf. United States v. Jawher*, 950 F.3d 576, 579 (8th Cir. 2020) (explaining that failure to include the knowledge-of-status element is an "error [that] is now plain under *Rehaif*"). But this *Rehaif* error was harmless. *See United States v. Mueller*, 661 F.3d 338, 347 (8th Cir. 2011) ("The harmless-error analysis applies 'to cases involving improper . . . instructions on a single element of the offense." (quoting *Neder v. United States*, 527 U.S. 1, 11

-12-

(1999))). An error is harmless when the evidence supporting the conviction "is so overwhelming that no rational [fact finder] could find otherwise." *United States v. Beckham*, 917 F.3d 1059, 1064 (8th Cir. 2019).

Sholley-Gonzalez stipulated to certain facts in this case. Those stipulated facts overwhelmingly show that a rational fact finder would find that Sholley-Gonzalez met the knowledge-of-status element. Specifically, he stipulated that (1) he had "received actual notice of the protective order hearing along with the opportunity to participate in the hearing," (2) he was subject to a court order protecting S.O., (3) S.O. "was, in fact, an intimate partner of [Sholley-Gonzalez]," (4) the court order prohibited him from "using, or attempting to use, or threatening to use physical force against [S.O.]," and (5) on the firearm-transaction form he answered that he was not subject to a court order protecting an intimate partner. Stipulation 1–2, *United States v. Sholley-Gonzalez*, No. 4:18-cr-00090-RGE-CFB-1 (S.D. Iowa 2019), ECF No. 52-1. With this knowledge, he would certainly have known that S.O. was his "spouse," "former spouse," "an individual who is a parent of [his] child," or "an individual who cohabitates or has cohabitated with [him]." 18 U.S.C. § 921(a)(32).

A rational fact finder would only have inferred that Sholley-Gonzalez had knowledge of his status under § 922(g)(8) beyond a reasonable doubt because he was aware of the facts that met the statutory requirements for the court order. In other words, he knew the facts that made him part of "the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. He need not have known that he was barred from possessing firearms or ammunition because of those facts, only that "he had the relevant status when he possessed it"—i.e., that he was subject to a qualifying court order. *Id.* at 2194; *cf. id.* at 2198 (explaining that "ignorance" about "the existence of a statute proscribing [certain] conduct" is no excuse, so long as "a defendant has the requisite mental state in respect to the elements of the crime" (citations omitted)). In addition, the federal definition for intimate partner was on the face of the court order.

Our conclusion is further supported by the district court convicting Sholley-Gonzalez of knowingly making a false statement under § 922(a)(6). To convict Sholley-Gonzalez under § 922(a)(6), the district court had to have found that Sholley-Gonzalez "*knowingly* [made] a[] false or fictitious . . . statement." (Emphasis added). And to knowingly make a false statement about his status, Sholley-Gonzalez must have had knowledge of his status. In short, a rational fact finder has already found that Sholley-Gonzalez had knowledge of his status when he made the false statement. *Cf. United States v. Dvorak*, 617 F.3d 1017, 1026 (8th Cir. 2010) ("Here, there is no need to guess as to whether a rational jury would have found [the defendant] guilty if the proper instructions were given because a rational jury *did* find that he met the additional element of the statute [in its answers to a special verdict form].").

The dissent cites *United States v. Davies*, 942 F.3d 871 (8th Cir. 2019), as undermining our conclusion. But *Davies* does the opposite. In *Davies*, Davies pleaded guilty to two Iowa felonies. 942 F.3d at 872. "After he pleaded guilty but before his sentencing," Davies illegally possessed firearms under 18 U.S.C. § 922(g)(1). *Id.* Section 922(g)(1) prohibits a person from possessing a firearm if they have "been *convicted* in any court of[] a crime punishable by imprisonment for a term exceeding one year." *Id.* (alteration in original) (emphasis added) (quoting 18 U.S.C. § 922(g)(1)). At trial, Davies stipulated that he knowingly possessed the firearms, *id.*, and that the Iowa felonies he pleaded to were "crimes 'punishable by a term of imprisonment greater than one year.'" *Id.* at 874. We explained that these "facts indicate[d] he knew the offenses to which he was pleading guilty would ultimately qualify him to be charged [under § 922(g)(1)], but there [wa]s no evidence that he knew when he possessed the firearms . . . , before his sentencing, that he had been *convicted* of those crimes." *Id.* (emphasis added). In short, the Davies's factual stipulations left ambiguity about whether he knew he had been *convicted* of a qualifying crime—a requirement for a defendant to fit into the § 922(g)(1) category.

Sholley-Gonzalez, on the other hand, stipulated to all the facts that fit him into the § 922(g)(8) category, and the district court found that Sholley-Gonzalez knew those facts. He stipulated that he had notice and opportunity to participate in a hearing about the court order. *See* § 922(g)(8)(A). He stipulated that the court order protected an intimate partner. *See* § 922(g)(8)(B). And he stipulated that the court order prohibited him from using, attempting to use, or threatening to use physical force against an intimate partner. *See* § 922(g)(8)(C)(ii). Then, the district court found that Sholley-Gonzalez knew these stipulated facts when he attempted to purchase a firearm at Walmart, violating § 922(a)(6).

Because the district court found that Sholley-Gonzalez knew the stipulated facts that fit him into the § 922(g)(8) category for purposes of the § 922(a)(6) violation, Sholley-Gonzalez also knew those facts for purposes of the § 922(g)(8) conviction. It would defy reason for the district court to have found that Sholley-Gonzalez simultaneously knew and did not know the facts that fit him into the § 922(g)(8) category.

Finally, Sholley-Gonzalez asserts that "knowledge of his prohibited status is inextricably intertwined with the question of whether § 922(g)(8) requires the restraining order to state by its own terms that the protected party and the restrained parties are intimate partners." Appellant's Br. at 23. He contends that this, in turn, implicates § 922(a)(6) "because . . . then his statement denying being a party to such an order was truthful, and he cannot be said to have knowingly made a false statement." *Id.* at 23–24. But as explained above, this argument is unavailing; § 922(g)(8) does not require the restraining order to state that the restrained party and the protected party are intimate partners.

Thus, we find that the district court's *Rehaif* error was harmless.

## C. *Sporting-Use Reduction*

In his last argument, Sholley-Gonzalez contends that the district court erred because its § 2K2.1(b)(2) ruling was partially premised on his attempted purchase

of a firearm. He did not raise this below, so we review for plain error. *United States v. Godfrey*, 863 F.3d 1088, 1095 (8th Cir. 2017). To show plain error, Sholley-Gonzalez "must show that there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Delgrosso*, 852 F.3d 821, 828 (8th Cir. 2017)).

Section 2K2.1(b)(2) would lower Sholley-Gonzalez's offense level to six if he "possessed all ammunition and firearms solely for lawful sporting purposes." To determine if the sporting-use reduction applies, courts review the "[r]elevant surrounding circumstances," such as "the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law." § 2K2.1(b)(2) cmt. n.6; *see also United States v. Moore*, 860 F.3d 1076, 1078 (8th Cir. 2017). Sholley-Gonzalez bears the burden of proving § 2K2.1(b)(2)'s reduction applies to him. *United States v. Bertling*, 510 F.3d 804, 811 (8th Cir. 2007).

Our first task in reviewing a sentence is to determine if there was significant procedural error. *United States v. Zeaiter*, 891 F.3d 1114, 1121 (8th Cir. 2018) (quoting *United States v. Fischer*, 551 F.3d 751, 754 (8th Cir. 2008)). If there was significant procedural error, we must reverse and remand. We have explained that "failing to calculate (or improperly calculating) the Guidelines range" or "selecting a sentence based on clearly erroneous facts" is a procedural error. *Godfrey*, 863 F.3d at 1094–95 (quoting *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009)). The nub of Sholley-Gonzalez's argument is that the district court misinterpreted § 2K2.1(b)(2) when it treated his attempted purchase of a firearm as actual possession, causing the district court to calculate his offense level as twelve instead of six, as the sporting-use reduction requires.

The district court began by properly identifying the § 2K2.1(b)(2) analysis: "The defense bears the burden of establishing that the defendant *possessed* all

ammunition and firearms solely for lawful sporting purposes or collection and did not unlawfully discharge or otherwise unlawfully use such a firearm or ammunition." Sentencing Tr. 38 (emphasis added). Immediately after this, however, the district court stated that its analysis included whether Sholley-Gonzalez's "*intended . . . purchase* [of] the firearm" was "solely for lawful sporting purposes." *Id.* (emphasis added). And the district court concluded its § 2K2.1(b)(2) analysis by explaining that it made no distinction between Sholley-Gonzalez's possession of the ammunition and attempted purchase of a firearm. It stated:

> Now, the question of whether or not the shotgun shells versus the firearm, which was possessed for which purpose, the parties haven't broken that down in terms of whether or not there's some argument that one was possessed for a lawful sporting purpose and the other wasn't. Here the standard is that all ammunition and firearms have to be possessed solely for lawful sporting purposes, and the court cannot make that finding.

*Id.* at 41. Thus, under the district court's analysis, Sholley-Gonzalez may have possessed the ammunition solely for lawful sporting purposes. And it may have been that only Sholley-Gonzalez's attempted purchase of a firearm was for a nonsporting purpose.

But § 2K2.1(b)(2)'s text only considers the firearms or ammunition the defendant actually "possessed," not those the defendant "attempted" or "intended" to possess. Nor does § 2K2.1(b)(2)'s commentary note include attempted possessions as relevant to the sporting-use reduction's application.[1] This stands in

---

[1] If the United States Sentencing Commission had wished to include attempted possession along with actual possession under § 2K2.1(b)(2)'s analysis, it could have done so. *Cf. United States v. Abumayyaleh*, 530 F.3d 641, 650 (8th Cir. 2008) (explaining that, because "we are bound by the plain text of the guidelines," a Guidelines enhancement that applied "[i]f any firearm . . . was stolen" only applied if the firearm was "actually stolen" and not "if the offender intended to purchase stolen firearms" that were "not actually stolen" (alterations in original) (quoting U.S.S.G. § 2K2.1(b)(4)).

-17-

contrast to more permissive language like that used in U.S.S.G. § 2K2.1(b)(1), which increases a defendant's offense level "[i]f the offense *involved* three or more firearms." (Emphasis added).

Because § 2K2.1(b)(2) does not contemplate attempted firearm purchases, the district court erred by including Sholley-Gonzalez's attempted purchase in its analysis. We have not previously addressed this specific issue, but § 2K2.1(b)(2)'s text is clear—actual, not attempted, possession should be analyzed. We have explained that

> [t]here is ultimately, however, a limit to what the district court can do, even under plain error review, and, for example, in the statutory construction context, it is possible that the construction of the statute proffered by the district court departs so far from the text that it is clearly incorrect as a matter of law.

*United States v. Lachowski*, 405 F.3d 696, 698–99 (8th Cir. 2005). This error was plain.

Sholley-Gonzalez must also show that the error affected his substantial rights. "An error affects substantial rights if there is a reasonable probability, based on the appellate record as a whole, that but for the error he would have received a more favorable sentence." *United States v. Edmonds*, 920 F.3d 1212, 1214 (8th Cir. 2019) (quotations omitted). Looking only at the ammunition Sholley-Gonzalez possessed, not to the firearm he attempted to purchase, there is a reasonable probability the sporting-use reduction would apply.

Because there is a reasonable probability that the sporting-use reduction would have applied to Sholley-Gonzalez's offense-level calculation, he has shown plain error. The district court calculated the suggested Guidelines range as 30–37 months' imprisonment. Applying the sporting-use reduction, along with lowering the offense level for acceptance of responsibility, the suggested range for Sholley-Gonzalez would have been 6–12 months' imprisonment. This is well below the sentence

imposed. Sholley-Gonzalez "need not make a further showing of prejudice beyond the fact that the erroneous guidelines range set the wrong framework for the sentencing proceedings." *United States v. Mulverhill*, 833 F.3d 925, 930 (8th Cir. 2016) (quotations omitted). Finally, miscalculating the base Guidelines range affects the fairness, integrity, and reputation of the courts. We thus remand for resentencing.

### III. *Conclusion*

The district court correctly determined that the indictment against Sholley-Gonzalez was facially sufficient and that *Rehaif* did not help Sholley-Gonzalez. But it committed plain error when analyzing the sporting-use reduction. Accordingly, we remand for resentencing.

LOKEN, Circuit Judge, dissenting in part.

I respectfully dissent from Part II.B. of the court's opinion. I conclude the district court committed plain error under <u>Rehaif v. United States</u>, 139 S. Ct. 2191 (2019), that was not harmless beyond a reasonable doubt and therefore Justin Sholley-Gonzalez deserves a new trial. I agree the district court erred in denying Sholley-Gonzalez a sporting purposes sentencing reduction, <u>see</u> USSG § 2K2.1(b)(2); I would remand for resentencing with instructions to apply the reduction.[2]

### I.

The Supreme Court held in <u>Rehaif</u> that, in a § 922(g) prosecution, "the Government must prove both that the defendant knew he possessed [ammunition] and that he knew he belonged to the relevant category of persons barred from possessing [ammunition]." 139 S. Ct. at 2200. The Court did not prescribe "what precisely the Government must prove to establish a defendant's knowledge of status"

---

[2] I agree the indictment stated a § 922(g)(8) offense and join Part II.A.(1) of the opinion. I would not reach the due process issues discussed in Part II.A.(2). It will not be an issue in future § 922(g)(8) prosecutions governed by <u>Rehaif</u>.

regarding § 922(g) provisions not at issue in Rehaif, including § 922(g)(8). Id. At a minimum, in this § 922(g)(8) prosecution, the government must prove that Sholley-Gonzalez "knew he belonged to the relevant category of persons," that is, persons "subject to a court order that restrains [him] from harassing, stalking, or threatening an intimate partner." 18 U.S.C. § 922(g)(8)(B).

In determining whether the plain Rehaif error was harmless, in my view the key fact is that the Iowa state court protection order issued against Sholley-Gonzalez did not have a check mark in two boxes designed to warn the person being restrained that the order would affect his right to possess firearms and ammunition under federal law -- the box designating S.O. as his "intimate partner," and the separate box stating that he could not possess firearms or ammunition while the order was in effect if the first box was checked. This made the order materially different than the order in United States v. Miller, a pre-Rehaif case on which the court relies. Though both cases involved the same form of Iowa protection order, in Miller the box stating that it applied to an intimate partner was checked. 646 F.3d 1128, 1130-33 (8th Cir. 2011).

Sholley-Gonzalez's pre-Rehaif trial was conducted on stipulated facts. He stipulated that he was subject to a court order issued after notice and hearing that protected S.O., and that she was in fact his intimate partner. Of course, had the trial taken place when Rehaif was governing law, so that knowledge of status was an essential element of the offense, Sholley-Gonzalez might not have entered into the stipulation. However, given the warnings in the order defining the federal definition of intimate partner and explaining the order's possible impact on the restrained party's lawful possession of firearms under federal law, these facts could not reasonably have been denied.

However, these stipulated facts did not establish that Sholley-Gonzalez knew he was subject to a court order that put him in the § 922(g)(8) category. With the boxes putting a restrained person in that status unchecked, Sholley-Gonzalez might have believed that the state court did not conclude S.O. was his intimate partner, or did not intend to subject him, a hunting and target shooting enthusiast, to this

-20-

burdensome federal law restraint. Unlikely, perhaps, but no more unlikely than the circumstances in United States v. Davies, 942 F.3d 871, 874 (8th Cir. 2019), where we reversed a felon-in-possession conviction for plain error under Rehaif because the defendant might not have known he was a convicted felon when he had not been sentenced at the time he committed the felon-in-possession offense. Sholley-Gonzalez has never been convicted or charged with an offense involving firearms.

The court reasons that, because the district court found that Sholley-Gonzalez "knowingly ma[de] a false statement about his status" when he answered the Wal-Mart form, it necessarily found he had knowledge of status. *Infra* p. 13-14. This begs the essential Rehaif question. Knowledge that he was under an order protecting a person who was in fact his intimate partner is not necessarily knowledge the state court issued an order that put him in the § 922(g)(8) category under federal law when the order did not check the box that said so. A reasonable fact finder could find Sholley-Gonzalez guilty of violating 18 U.S.C. § 922(a)(6) but not § 922(g)(8). Indeed, at a new trial where fewer facts are stipulated because his *mens rea* is properly in focus, both acts could be "innocent mistake[s]" evincing a "lack of intent needed to make his behavior wrongful." Rehaif, 139 S. Ct. at 2197. In that case, he could be found guilty of neither offense.[3]

I agree with the court that a rational fact finder could find on these facts that Sholley-Gonzalez had knowledge of his status under § 922(g)(8). But I disagree that the evidence was "so overwhelming that no rational [fact finder] could find otherwise." United States v. Beckham, 917 F.3d 1059, 1064 (8th Cir. 2019). I conclude there is a reasonable probability the outcome of Sholley-Gonzalez's trial would have been different because the government did not prove this element of the § 922(g)(8) offense -- that Sholley-Gonzalez knew he was "subject to a court order that . . . restrains [him] from harassing, stalking, or threatening an intimate partner." See Rosales-Mireles v. United States, 138 S. Ct. 1897, 1904-05 (2018) (standard for plain error relief). Weighing the totality of these unusual circumstances, I conclude

---

[3]The PSR recited that Sholley-Gonzalez checked "no" on the Wal-Mart firearm application form because he believed S.O. had dropped the protection order.

this is the rare case, like <u>Davies</u> and <u>Rehaif</u> itself, where <u>Rehaif</u>'s significant change in the law warrants a new trial.

## II.

I will comment briefly on the sporting purposes issue. As the court notes, the defendant must prove by a preponderance of the evidence that he qualifies for the § 2K2.1(b)(2) reduction. <u>United States v. Massey</u>, 462 F.3d 843, 845 (8th Cir. 2006). At sentencing, Sholley-Gonzalez presented substantial evidence that he possessed the ammunition solely for lawful sporting purposes. He testified that he enjoys hunting and target shooting, and had engaged in the latter with his daughter as late as February 2018. He also testified that the 20-gauge and .410 shotgun shells found at his home were left over from previous hunting and target shooting outings, and that he only used the ammunition for those purposes. He introduced past hunting and fishing licenses, letters from friends and family attesting to his participation in sporting activities, and pictures of him and his daughter engaging in hunting and shooting. He testified that he went to Wal-Mart looking for a .22-caliber rifle for his daughter. When he asked for "the cheapest gun," the clerk showed Sholley-Gonzalez three 12-gauge shotguns, guns consistent with hunting and target shooting and not designed for the 20-gauge and .410 shotgun shells in his home that are the basis for his § 922(g)(8) conviction.

The government failed to present any evidence that Sholley-Gonzalez possessed the ammunition for other than lawful sporting purposes. Nor did the government even probe that issue. Rather, on cross-examination, the government questioned Sholley-Gonzalez about his trip to Wal-Mart, his prior drug use, and his harassment of S.O and her family. When Sholley-Gonzalez objected, the government responded that it was pursuing "line[s] of questioning" to probe "what his intent was with those *firearms*" the clerk had shown him. The district court overruled Sholley-Gonzalez's relevance objection because the focus was on "other potential uses of the *firearm*." But Sholley-Gonzalez never possessed the shotguns the Wal-Mart clerk displayed.

In denying the sporting purposes reduction, the district court did not consider the evidence that Sholley-Gonzalez possessed the ammunition found in his home solely for lawful sporting purposes, other than to observe that he had not had a valid hunting license since 2014.[4] Instead, the court denied the reduction based primarily on his attempt to purchase a firearm at Wal-Mart, and the facts underlying the issuance of the state court protection order, which did not involve the use of a firearm:

> [T]he context of this defendant cannot be overlooked in looking at the *possession of a firearm . . . .* The evidence that's been presented to show that this was solely for hunting purposes is not persuasive.
>
> The fact that he was an avid fisherman or an avid hunter bears to no extent on the purposes for these firearms. The fact that he had admittedly engaged in the harassing conduct and that involving [sic] the victim and her father undermines the arguments in terms of the fact that *there were no other purposes that could have been used with this firearm*.
>
> Now, the question of whether or not the shotgun shells versus the firearm, which was possessed for which purpose, the parties haven't broken that down in terms of whether or not there's some argument that one was possessed for a lawful sporting purpose and the other wasn't. Here the standard is that all ammunition and firearms have to be possessed solely for lawful sporting purposes.

(Emphases added).

I conclude both the government and the district court focused on irrelevant facts. It was error to focus on Sholley-Gonzalez's *attempt* to purchase a shotgun at

---

[4]Sholley-Gonzalez testified that the ammunition found at his home was left over from previous outings. Of course a person does not need a hunting license to engage in target shooting.

Wal-Mart. He was not convicted of that conduct.[5] True, USSG § 2K1.2(b)(2) refers to whether the defendant "possessed all ammunition and firearms solely for lawful sporting purposes or collection." But Application Note 6 refers only to actual possession and use. The shotguns were never possessed, and Sholley-Gonzalez was convicted of possessing ammunition entirely unconnected to his shopping at Wal-Mart. Thus, the trip to Wal-Mart was not conduct relevant to the sporting purposes reduction; it did not "occur[] during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1). Viewing 12-gauge shotguns at Wal-Mart while shopping for his daughter sheds no light on Sholley-Gonzalez's purposes for possessing ammunition of a completely different gauge or caliber.

The district court improperly applied the Guidelines when it considered conduct that was irrelevant to the sporting purposes reduction. See United States v. Lussier, 423 F.3d 838, 843 (8th Cir. 2005), cert. denied, 546 U.S. 1130 (2006) (standard of review). Based on the relevant evidence at sentencing, this case is strikingly similar to Massey, where we upheld the grant of a sporting purposes reduction on facts that mirror much of the evidence Sholley-Gonzalez presented. 462 F.3d at 847. In both cases, the defendant had: (i) no prior convictions for offenses involving firearms, (ii) evidence of hunting and fishing licenses and deer tags, and (iii) letters from those who knew them attesting to their enthusiasm for hunting. Id. at 846. Adding the fact that the loose array of 20-gauge and .410 shotgun shells found at Sholley-Gonzalez's home are ammunition typically used for target shooting and small game hunting, and the absence of contrary evidence from the government, I conclude the "relevant surrounding circumstances" point to him possessing the ammunition solely for lawful sporting purposes. See USSG § 2K2.1(b)(2) cmt. n.6. Given the total lack of evidence rebutting Sholley-Gonzalez's evidence of lawful sporting purposes for his ammunition possession, I would remand with instructions to grant the reduction.

_____

_____

[5]Count 1 of the indictment charged Sholley-Gonzalez with unlawful *possession* of the firearm he did not purchase at Wal-Mart. The government stipulated that if the court found him guilty of unlawful possession of the ammunition, it would dismiss Count 1 at sentencing.